# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION - DETROIT

**IN THE MATTER OF:**

Manning Mechanical, PLLC

           Debtor

Bankruptcy Case No. 26-41173
Judge Thomas J. Tucker
Chapter 11
*Subchapter V*

## SUBCHAPTER V PLAN OF REORGANIZATION FOR MANNING MECHANICAL, PLLC

PREPARED BY:

STEVENSON & BULLOCK, P.L.C.
Elliot G. Crowder (P76137)
Ernest M. Hassan, III (P67815)
Tayler J. Leamon (P83385)
Counsel for Debtor
26100 American Drive, Suite 500
Southfield, MI 48034
Phone: (248) 354-7906
Facsimile: (248) 354-7907
Email: ecrowder@sbplclaw.com
Email: ehassan@sbplclaw.com
Email: tleamon@sbplclaw.com

# INTRODUCTION

The debtor, Manning Mechanical, PLLC (the "Debtor") proposes this plan of reorganization (the "Plan") for the resolution of outstanding claims against the Debtor pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 11-1532 (the "Bankruptcy Code"). Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in Article I hereof. The Debtor is the proponent of the Plan under Bankruptcy Code sections 1189(a) and 1129.

## ARTICLE I
## DEFINITIONS, RULES OF INTERPRETATION
## AND COMPUTATION OF TIME

1.1 **Scope of Definitions; Rules of Construction:** For the purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I of the Plan. Any term used in the Plan that is not defined in this Article I of the Plan, but is defined in the Bankruptcy Code or the Bankruptcy Rules (as defined below) or the Disclosure Statement shall have the meaning ascribed to such terms in the Bankruptcy Code, the Bankruptcy Rules or the Disclosure Statement as the case shall be. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include masculine. For purposes of the Plan, the following terms shall have the meaning set forth below, unless the context requires otherwise.

1.2 **Definitions:**

1.2.1 "Administrative Claim" means Allowed Claims for costs and expenses of administration of this chapter 11 case allowed under §§ 503(b) and 507(a)(2) of the Bankruptcy Code.

1.2.2 "Administrative Claims Bar Date" means the deadline for filing requests for payment of allowed Administrative Claims (other than Professional Fee claims), which shall be the first Business Day that is sixty (60) days following the Effective Date, except as specifically set forth in the Plan or a Final Order.

1.2.3 "Administrative Creditor" means a holder of an Administrative Claim.

1.2.4 "Allowed Claim" or "Allowed Interest" means any Claim for which a proof of claim has been filed prior to the Bar Date or that is scheduled and not listed as disputed, contingent, or unliquidated, and to which no objection has been timely filed; or any claim as to which an objection has been resolved by a Final Order of the Court establishing the priority and amount of such claim.

1.2.5 "Article" refers to a specific article of this Plan.

1.2.6 "Avoidance Actions" means Causes of Action of the Debtor, the Estate of the Reorganized Debtor arising under chapter 11, and any related sections of the Bankruptcy Code, including without limitation, §§ 502, 510, 541, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such Cause of Action.

1.2.7 "Ballot" The ballot attached as Exhibit C, which has been distributed to all Creditors and parties-in-interest in connection with the solicitation of votes for or against the Plan.

1.2.8 "Bankruptcy Code" or "Code" means the Bankruptcy Reform Act of 1978, as amended (11 U.S.C. §§101, *et seq.*).

1.2.9 "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, and any court having jurisdiction to hear appeals therefrom.

1.2.10 "Bankruptcy Rules" or "Rules" means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court that became effective on August 1, 1991, and any amendments thereto. To the extent applicable, Bankruptcy Rules also refers to the Local Rules of the U.S. District Court for the Eastern District of Michigan, as amended and the Local Bankruptcy Rules for the Eastern District of Michigan, as amended.

1.2.11 "Bar Date" means the date established by the Bankruptcy Court for the filing of any Claims.

1.2.12 "Business Day" means any day, other than a Saturday, Sunday or Legal Holiday, as that term is defined in Bankruptcy Rule 9006(a).

1.2.13 "Case" means the Debtor's bankruptcy case currently pending

before the Bankruptcy Court entitled *Manning Mechanical, PLLC*, Case No. 26-41173.

1.2.14 "Causes of Action" means all Claims, rights and causes of action belonging to the Debtor and upon confirmation, the Reorganized Debtor, including without limitation, Avoidance Actions and any related Claims and actions arising under such sections of the Bankruptcy Code by operation of law or otherwise; any Claims or Causes of Action against any third parties and any and all proceeds of the foregoing.

1.2.15 "Claim" means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.2.16 "Claimant" means any individual or entity which has a valid Claim as defined herein.

1.2.17 "Class" means a class of holders of Claims or Interests described in Article III of this Plan.

1.2.18 "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order.

1.2.19 "Confirmation Hearing" means the hearing conducted by the Bankruptcy Court to consider the confirmation of the Plan filed by the Debtor.

1.2.20 "Confirmation Order" means the Order entered confirming this Plan pursuant to §1129 of the Code.

1.2.21 "Contested Claim" or "Contested Interest" means any Claim or Interest as to which the Debtor or any other party in interest has interposed an objection or commenced an adversary proceeding in accordance with the Bankruptcy Code, Bankruptcy Rules and this Plan, which objection has not been determined by a Final Order.

1.2.22 "Creditor" means any holder of a Claim against the Debtor.

1.2.23 "Debtor" means Manning Mechanical, PLLC.

1.2.24 "Debtor-In-Possession" means the Debtor in its capacity as debtor-in-possession as term as defined in the Bankruptcy Code in the Case.

1.2.25 "Disallowed" means (a) a Claim or Interest or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or Interest or any portion thereof that is listed in the Debtor's Schedules at zero or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) a Claim or Interest or any portion thereof that is not listed in the Debtor's Schedules and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

1.2.26 "Effective Date" means the date that is one (1) day after the Confirmation Order becomes a Final Order.

1.2.27 "Estate" means the bankruptcy estate of the Debtor created pursuant to § 541 of the Bankruptcy Code.

1.2.28 "Final Order" means an Order of the Bankruptcy Court as to which (i) the time for appeal has expired and no appeal has been timely taken; or (ii) any timely appeal has been finally determined or dismissed; or (iii) an appeal has been timely taken but such order has not been stayed within fourteen (14) days after the filing of such appeal.

1.2.29 "Governmental Unit" has the meaning ascribed to it in § 101(27) of the Bankruptcy Code.

1.2.30 "Holder" means a Person holding a Claim, Interest, or Lien, as applicable.

1.2.31 "Impaired" means a Claim treated under this Plan, unless the Plan:

A. leaves unaltered the legal, equitable, and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; or notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default;

B. cures any such default (other than defaults relating to (i) any penalty interest rate or provision arising from a non-monetary default by the Debtor; (ii) the solvency or financial condition of the Debtor; or (iii) the commencement of this Case) that occurred before or after the commencement of the Case;

C. reinstates the maturity of such Claim or Interest as such maturity existed before such default;

D. compensates the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance on such contractual provision or such applicable law; and

E. does not otherwise alter the legal, equitable or contractual rights to which such Claim or Interest entitles its holder.

1.2.32 "Insider" has the meaning given to it under § 101(31) of the Bankruptcy Code.

1.2.33 "Interest" means an equity interest in the Debtor as defined in § 101(16) of the Code.

1.2.34 "Interest Rate" means (a) with respect to Claims entitled to interest under § 506 of the Bankruptcy Code and this Plan and having an applicable contractual rate of interest evidenced by a writing signed by an executive officer of the Debtor the lowest rate of interest provided in such contract, without regard to any default by Debtor, (b) with respect to all other Claims entitled to interest under the Bankruptcy Code and this Plan, the applicable statutory rate for such Claims or, if no statutory rate exists, 1.0% per year, or (c) with respect to (a) or (b) such other interest rate as may be determined by a Final Order of the Bankruptcy Court.

1.2.35 "Lien" means any security interest, lien, tax lien, mortgage, encumbrance, common law or statutory lien, charge against, or an interest in property to secure payment of a debt or performance of an obligation. "Lien" shall

be defined as, and interpreted in, as broad a manner as possible.

1.2.36 "Petition Date" means February 4, 2026, the date that the Debtor filed his chapter 11 voluntary petition, which commenced the Case.

1.2.37 "Person" has the meaning given to it under § 101(41) of the Bankruptcy Code.

1.2.38 "Plan" means this Plan, as it may be altered, amended or modified from time to time.

1.2.39 "Priority Claim" means a Claim under or entitled to priority under any of the following sections of the Code: §§ 507(a)(4), 507(a)(5), or 507(a)(8).

1.2.40 "Pro Rata" means, at any time, the proportion that the face amount of a Claim in a particular Class bears to the aggregate face amount of all Claims (including disputed or Contested Claims) in such Class, unless the Plan expressly provides otherwise.

1.2.41 "Professional Fees" means the fees and reimbursement for disbursements owed to attorneys, accountants, or other professionals whose employment has been approved by the Bankruptcy Court.

1.2.42 "Proponent" means the Debtor, the Proponent of this Plan.

1.2.43 "Section" refers to a specific section or subsection of this Plan, unless otherwise set forth herein.

1.2.44 "Secured Claim" means a Claim secured by a Lien on property in which the estate has an interest but only to the extent of the value of the Creditor's interest in the estate's interest in the property as of the Petition Date.

1.2.45 "Subchapter V Trustee" means the trustee appointed in the Case pursuant to section 1183.

1.2.46 "Unimpaired" or "Unimpaired Claim" means a Claim treated under this Plan that leaves unaltered the legal, equitable, and contractual rights of such Claim and is not Impaired.

1.2.47 "Unsecured Claim" means a Claim that is not a Secured Claim and is not an Administrative Claim or a Priority Claim.

1.2.48 "United States Trustee" means the Unites States Trustee for Region 9.

1.3 **Rules of Interpretation**: For purposes of the Plan:

1.3.1 Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially on such terms and conditions.

1.3.2 Any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified or supplemented.

1.3.3 The words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan unless expressly stated otherwise.

1.3.4 Captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or effect the interpretation of the Plan.

1.3.5 The rules of construction set forth in § 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

1.3.6 The Disclosure Statement may be used as an aid for interpretation of this Plan to the extent that any provision of this Plan is determined to be vague or ambiguous; however, to the extent any statement in the Disclosure Statement conflicts with any provision of this Plan, this Plan controls.

1.4 **Computation of Time**: In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall govern. If the Effective Date or any other date on which a transaction or distribution may occur under the Plan occurs on a day that is not a Business Day, the transactions or distributions contemplated by the Plan to occur on such day shall instead occur on the next business day following such non-business day.

1.5 **Governing Law**: Unless a rule of law or procedure is supplied by

federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Michigan shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan.

1.6 **Exhibits**: All exhibits are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such exhibits shall be filed with the Bankruptcy Court. Upon its filing, the Exhibit may be inspected in the office of the Clerk of the Bankruptcy Court or its designee during normal business hours or at the Bankruptcy Court website for a fee at http://ecf.mieb.uscourts.gov. The exhibits may also be requested, in writing, from the Debtor's counsel. All exhibits may be revised prior to the Confirmation Date by the filing of the revised exhibits with the Bankruptcy Court, so long as the revised exhibits are substantially in conformance with the terms of this Plan. The exhibits are an integral part of the Plan, and entry of the Confirmation Order by the Bankruptcy Court shall constitute an approval of the exhibits.

1.7 **Estimates of Claims**: Unless expressly stated otherwise, nothing herein shall be deemed an admission by the Debtor or to otherwise prejudice the Debtor in any claim's objection or Cause of Action. All estimates of Causes of Action and Claims amounts listed in this Plan are current estimates only. All Claims amounts and classifications remain subject to the Claims objection process as forth herein.

**ARTICLE II**
**BRIEF BACKGROUND**

This section provides a brief overview and history of the Debtor. Creditors and other parties in interest may disagree with statements contained in this Article; however, it is for informational purposes only and shall not be deemed accurate or have preclusive effect in any future proceeding.

2.1 **History of the Debtor**:

Organized in 2015, the Debtor is a leading provider of residential and commercial heating and cooling services in the Greater Detroit area. The Debtor is licensed by the state of Michigan with a specialty license in "Hydronic (boiler) Piping." The Debtor maintains accounts with various commercial and residential clients; however, given the priority that the Debtor places on its connection to the local community, the heart and soul of its business is centered around providing services to its residential customers. The Debtor is not merely a contractor – all installations and

services provided by the Debtor are completed by the Debtor's own team members. To ensure that its customers are comfortable year-round, the Debtor offers its customers the opportunity to join the Debtor's HVAC membership club, called "The Comfort Club" whereby benefits and savings are passed along to the Debtor's loyal customers. The Debtor is committed to excellence and customer satisfaction. The Debtor filed this bankruptcy to reorganize its financial affairs and develop and plan to address its debts. The Debtor is confident in its ability to emerge from its reorganization as a stronger, more efficient, operation while furthering its mission of providing customers with high-quality service.

### 2.2 **Liquidation Analysis**:

The Debtor's Liquidation Analysis is attached to this Plan as Exhibit A. The Debtor believes that under the Plan, creditors will receive not less than they would receive if the Debtor's assets were liquidated under Chapter 7 of the Bankruptcy Code.

All values contained in the Liquidation Analyses are based on good faith estimates using information currently available to the Debtor. The estimates contained therein have not been subject to audit and the Debtor's assets have not been formally appraised for purposes of the Liquidation Analyses. The estimates shall in no way be construed to constitute binding guaranties, representations, or warranties and are subject to revision at any time.

The values for the Debtor's assets are based upon reasonable estimates of the values as carried on the Debtor's books and records. In establishing the values, the Debtor has considered the size, age, physical condition, and location of the assets.

It is also noteworthy that upon a liquidation of the Debtor's assets, there may be significant penalties and adjustments. The amounts contained in the Liquidation Analysis are conservative estimates, but the adjustments may be much higher.

### 2.3 **Post-Confirmation Financial Projections**:

The Debtor has attached as Exhibit B a summary of post-confirmation financial projections for the time July 1, 2026, through June 30, 2031.

### 2.4 **Ballot**:

The Ballot is attached hereto as Exhibit C.

<h1 style="text-align:center">ARTICLE III<br>ADMINISTRATIVE AND PRIORITY CLAIMS</h1>

Administrative Creditors and Priority Creditors shall be paid on account of their respective Administrative and Priority Claims in accordance with the provisions set forth below:

3.1 **GROUP I: Professional Fee Claims.** This Group consists of Stevenson & Bullock, P.L.C. and the Subchapter V Trustee, all of which are Holders of Professional Fee Claims and are beneficiaries of escrowed funds. Each Holder of an Allowed Professional Fee Claim shall be paid, in full, in Cash equal to the amount of its Allowed Professional Fee Claim on the date on which such Professional Fee Claim becomes an Allowed Professional Fee Claim.

3.1.1 All unpaid Professional Fee Claims incurred prior to the Effective Date shall be subject to final allowance or disallowance upon application to the Bankruptcy Court pursuant to §§ 328, 330, or 503(b)(4) of the Bankruptcy Code. Final applications for allowance of Professional Fee Claims for services rendered in connection with the Case shall be filed with the Bankruptcy Court no later than thirty (30) days after the Effective Date (or within such additional period thereafter as the Court, on motion of the Holder of that Professional Fee Claim, may order).

3.2 **GROUP II: Administrative Claims.** The claims of Group II shall consist of all Administrative Claims, including any taxes that qualify as Administrative Claims (including, without limitation, any Allowed Professional Fee Claims that are not paid and satisfied in full under Group I above). The Allowed Claims of this Group shall be paid the full amount of their Claims on such date as may be mutually agreed upon between the Debtor and the particular claimant, or, if no such date is agreed upon, the later of (i) the Effective Date, (ii) the date by which payment would be due in the ordinary course of business between the Debtor and such Administrative Creditor, or (iii) the date on which the Bankruptcy Court enters its order, if necessary, approving the Debtor's payment of such expenses. All Professional Fees that are the subject of pending fee applications before the Bankruptcy Court, or that have already been allowed by the Bankruptcy Court but which remain unpaid as of the Effective Date, unless otherwise agreed by such professionals, shall be paid in full, in cash, within seven (7) days after a Final Order of the Bankruptcy Court has been entered authorizing their payment, whichever is later.

3.2.1 The Bar Date for asserting any Administrative Claim is fourteen (14) days after the Effective Date. Any Administrative Claim first asserted after the Bar Date shall be deemed Disallowed and shall not be entitled to any distributions under this Plan. The objection procedures in Article IX of this Plan are applicable to any filed Administrative Claim. This Section 3.2.1 does not apply to any Professional Fee Claim. The Debtor does not estimate having any Administrative Claims (other than Professional Fee Claims that are addressed *supra*, and therefore includes this Section 3.2 merely in an abundance of caution.

3.3 **Priority Tax Claims**. This section 3.3 shall consist of all Allowed Priority Tax Claims, if any, under § 507(a)(8) of the Code.

3.3.1 Any payments made to Allowed Priority Tax Claims shall first be applied to the trust fund portion of taxes, including any trust fund recovery penalties.

3.3.2 The Michigan Department of Treasury/Internal Revenue Service is estimated to hold an Allowed Priority Tax Claim that is entitled to Priority under § 507(a)(8) in amount of $123,497.02. This Claim, if allowed, will receive payments from the Debtor and be paid in full within (60) months of the Petition Date with accrued interest at 4.0% annually, beginning on the Effective Date, and accruing interest until paid in full in the total amount of $2,274.39 per month.

3.3.3 After Holders of all Allowed Administrative Claims (including any unpaid balance of the Allowed Professional Fee Claims) are paid and satisfied in full, Holders of Allowed Priority Tax Claims will receive Pro Rata distributions from the Debtor until the proceeds of the Assets are exhausted or until that Holder's Allowed Priority Tax Claims are paid in full, whichever occurs first.

3.4 The Debtor shall have the right to challenge any Priority Tax Claim through the claims objection process set forth in Article IX, which challenge may include, but is not limited to, a challenge to any penalty portion of such Claim, the amount and the value of the property which forms the basis for any assessment of taxes and the computation of the tax. The right to challenge these claims shall include, without limitation, an objection to the assessment of the Debtor's property that may or may not have been made by the respective taxing authority.

3.5 To the extent that an objection is filed regarding any Priority Tax Claim, the Debtor shall not be obligated to pay that Priority Tax Claim until the Priority Tax Claim has been Allowed by a Final Order of the Bankruptcy Court. Payment in

respect of a Priority Tax Claim that is Disputed and later Allowed shall commence on the first business day of the calendar quarter following the Court's entry of a Final Order allowing that Priority Tax Claim.

3.5.1 The Debtor shall have the right to challenge any Priority Claim through the claims objection process set forth in Article X, which challenge may include but is not limited to a challenge to any penalty portion of such Claim, the amount and the value of the property which forms the basis for any assessment of taxes and the computation of the tax. The right to challenge these claims shall include, without limitation, an objection to the assessment of the Debtor's personal property that may or may not have been made by the respective taxing authority.

3.5.2 To the extent that an objection is filed, the Debtor shall not be obligated to pay any Allowed Priority Claim until a determination of the amount of the Priority Claim has been made by the Bankruptcy Court. Payments to these Priority Claims that are ultimately allowed shall commence on the first business day of the calendar quarter following the Court's final determination of the allowability of all of the Claims in this Class.

3.5.3 Until such time as the Priority Claim has been fully and indefeasibly paid, the Priority Claimant shall retain any and all Liens that it may have which shall remain in full force and effect, with the same Priority and to the same extent that existed on the Petition Date. Upon payment in full of the Priority Claim, the Priority Claimant shall release and extinguish all Liens and execute any and all documents reasonably requested by the Debtor to memorialize same.

3.5.4 Provided that the Debtor is making all payments required under the Plan, any taxing authority shall not pursue any further collection efforts, including the issuance of levies, seizure of assets, imposition of trust fund recovery penalties and assessments and filing of Liens against any party who may also be liable to pay or satisfy Tax Claims. If Claimants of this Group seize assets or collect funds from any non-debtor party, the Debtor may reduce their payments under the Plan, in their discretion, by the amount of funds seized.

## ARTICLE IV
## DESIGNATION AND TREATMENT OF CLASSES
## OF CLAIMS AND INTERESTS

This Plan divides Claims and Interests into classes and treats them as follows:

4.1  **Class I – Wayne County Treasurer:** This Class shall receive payments and treats the Allowed Secured Claim of the Wayne County Treasurer ("Wayne County Treasurer"). Wayne County Treasurer shall possess an Allowed Secured Claim in the amount of no more than thirty-four thousand eight hundred three & 90/100 ($34,803.90) dollars for property taxes. These Claims, if allowed, will receive payments from the Debtor and be paid in full within (60) months of the Petition Date with accrued interest at 4.0% annually, beginning on the Effective Date, and accruing interest until paid in full in the total amount of $640.97 per month.

**This Class is Impaired.**

4.2  **Class II – DWSD:** This Class shall receive payments and treats the Allowed Secured Claim of the Detroit Water and Sewage Department ("DWSD"). Detroit shall possess an Allowed Secured Claim in the amount of no more than two thousand two hundred sixty-one & 27/100 ($2,261.27) dollars for water and sewerage. These Claims, if allowed, will receive payments from the Debtor and be paid in full within (60) months of the Petition Date with accrued interest at 4.0% annually, beginning on the Effective Date, and accruing interest until paid in full in the total amount of $41.64 per month.

**This Class is Impaired.**

4.3  **Class III – Newtek Bank:** This Class shall receive payments and treats the Allowed Secured Claim of Newtek Bank, National Association ("Newtek"). Newtek shall possess an Allowed Secured Claim in the amount of no more than four hundred eighteen thousand one hundred one & 50/100 ($418,101.50) dollars (the "Secured Amount") against the Debtor's properties located at 8800 and 8806 W. McNichols Rd., Detroit, MI 48221 and other assets to the extent as set forth in their security instruments and UCC-1 financing statement filed with the State of Michigan Department of State bearing filing number 20230728000660-0 (the "Newtek Claim"). The Newtek Claim shall be paid in full on or before June 30, 2031, with accrued interest of 4.00% per annum until paid in full. There shall be no penalty for prepayment of the Newtek Claim.

Payments shall be made in monthly installments of seven thousand six hundred ninety-nine & 98/100 ($7,699.98) dollars on or before the 10th of each month and shall continue as set forth herein until the Secured Amount of the Newtek Claim is paid.

The remaining amount of the Newtek Claim, pursuant to § 1123(b)(5), the asserted secured claim of Newtek shall be "crammed down" to the sum of zero and 00/100 dollars, as no equity exists to secure the secured claim of Newtek. Newtek's remaining crammed down claim shall therefore be treated as an Unsecured Claim and shall be treated as a holder of an Allowed Unsecured Claim.

**This Class is Impaired.**

4.4     **Class IV – Thoro:** This Class will not receive payment treats the Thoro Corp ("Thoro"). Pursuant to § 1123(b)(5), the asserted secured claim of Thoro shall be "crammed down" to the sum of zero and 00/100 ($0.00) dollars, as no equity exists to secure the secured claim of Thoro. Thoro shall therefore be treated as an Unsecured Claim and shall be treated as a holder of an Allowed Unsecured Claim.

**This Class is Impaired.**

4.5     **Class V – U.S. Small Business Administration:** This Class will not receive payment treats the U.S. Small Business Administration (the "SBA"). Pursuant to § 1123(b)(5), the asserted secured claim of the SBA shall be "crammed down" to the sum of zero and 00/100 ($0.00) dollars, as no equity exists to secure the secured claim of the SBA. The SBA shall therefore be treated as an Unsecured Claim and shall be treated as a holder of an Allowed Unsecured Claim.

**This Class is Impaired.**

4.6     **Class VI – Ally Bank:** This Class will not receive payment treats Ally Bank ("Ally"). Pursuant to § 1123(b)(5), the asserted secured claim of the SBA shall be "crammed down" to the sum of zero and 00/100 ($0.00) dollars, as no equity exists to secure the secured claim of Ally. Ally shall therefore be treated as an Unsecured Claim and shall be treated as a holder of an Allowed Unsecured Claim.

**This Class is Impaired.**

4.7     **Class VII – Fugi Funding:** This Class will not receive payment treats the Fugi Funding ("Fugi"). Pursuant to § 1123(b)(5), the asserted secured claim of Fugi shall be "crammed down" to the sum of zero and 00/100 ($0.00) dollars, as no equity exists to secure the secured claim of Fugi. Fugi shall therefore be treated as an Unsecured Claim and shall be treated as a holder of an Allowed Unsecured Claim.

**This Class is Impaired.**

4.8    **Class VIII – Unsecured Creditors:** This Class consists of the Holders of Allowed Unsecured Claims against the Debtor. Neither pre-confirmation interest nor post-confirmation interest on Allowed Class VI Claims will be paid. A Creditor in this Class shall receive a pro rata distribution incident to its Allowed Unsecured Claims based on the below distribution schedule:

A.    Annual payments will be made to this Class. The first payment, due on December 31, 2026, will be in the amount of two thousand five hundred & 00/100 ($2,500.00) dollars. For the payments due on December 31, 2027, December 31, 2028, December 31, 2029, and December 31, 2030, payments will be made in the amount of three thousand & 00/100 ($5,000.00) dollars. The final payment of two thousand five hundred & 00/100 ($2,500.00) dollars shall be made on or before June 30, 2031.

**This Class is Impaired.**

4.9    **Class IX – Equity Interest Holders**: This Class shall consist of the Interests of the Debtor. Holders of the Interests shall retain their interests in the Debtor and Reorganized Debtor in the same manner as percentage upon confirmation of the Plan.

**This Class is Unimpaired**

## ARTICLE V
## MEANS OF EXECUTION OF THE PLAN

5.1    **The Reorganized Debtor**: On the Effective Date, all of the Debtor's rights, titles, and interests in and to all of its property shall revest in the Reorganized Debtor free and clear of any claims or interests, including liens, except as expressly provided in this Plan. The Debtor shall be discharged from its status as "debtor" and his affairs and business shall be thereafter conducted by the Reorganized Debtor without Court supervision, except as may be governed by this Plan. If the Debtor's bankruptcy case is converted to Chapter 7, all property vested in the Reorganized Debtor will revest and become property of the Chapter 7 estate.

5.2    **Professional Fees of the Debtor and Reorganized Debtor**: Any services performed or expenses incurred by any professional on behalf of the Debtor or Reorganized Debtor with respect to these Case after the Confirmation Date, shall not be subject to the prior review and approval of the Bankruptcy Court and,

notwithstanding any provision of the Bankruptcy Code or Rules, including, without limitation, Fed. R. Bankr. P. 2016, after the Confirmation Date, no professional shall be required to disclose payments from the Debtor or Reorganized Debtor to the Bankruptcy Court or the United States Trustee. All fees and expenses arising after the Confirmation Date shall be billed directly to the Reorganized Debtor as the case may be.

5.3 **Change of Address**: In order to ensure that it receives its distribution, each Creditor must advise the Reorganized Debtor of any change in address. Absent any such notification, the Reorganized Debtor will send payments to the address listed on the Matrix on file with the Bankruptcy Court.

5.4 **Litigation**: Unless expressly waived or settled in the Plan or Confirmation Order, all Causes of Action are expressly reserved, whether or not specifically listed in this Plan or the Debtor's bankruptcy schedules filed with the Court, as amended. Upon the Effective Date, all Causes of Action are expressly vested in the Reorganized Debtor. No preclusion doctrine, estoppel (judicial, equitable or otherwise) or laches shall apply to any Causes of Action as a consequence of the Confirmation, the Effective Date or consummation of the Plan.

## ARTICLE VI
## ACCEPTANCE OF THE PLAN

6.1 **Presumed Acceptance of the Plan**: Class IX is conclusively presumed to have accepted the Plan pursuant to § 1126(f) of the Bankruptcy Code.

6.2 **Presumed Rejection of the Plan**: No Class is conclusively presumed to have rejected the Plan pursuant to § 1126(g) of the Bankruptcy Code.

6.3 **Voting Classes**: Classes I through VIII are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

6.4 **Elimination of Vacant Classes**: Any Class of Claims that does not have a Holder of an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to § 1129(a)(8) of the Bankruptcy Code.

6.5 **Cramdown**: The Debtor will request confirmation of the Plan, as it

may be modified from time to time, under § 1191 of the Bankruptcy Code. The Debtor reserves the right to modify the Plan to the extent, if any, that confirmation pursuant to § 1191 of the Bankruptcy Code requires modification of the Plan.

## ARTICLE VII
## EXECUTORY CONTRACTS

7.1 **Assumption of Executory Contracts**: The occurrence of the Effective Date shall constitute the assumption, pursuant to § 365(a) of the Bankruptcy Code, of all executory contracts and unexpired leases that have not already been assumed or rejected by the Debtor, or that are not the subject of a pending motion to assume or reject as of the date the Confirmation Order is entered.

## ARTICLE VIII
## MODIFICATION OF THE PLAN

8.1 After confirmation, and before substantial consummation of the Plan, the Debtor may, from time to time, propose amendments or modifications of this Plan without leave of the Court. After confirmation and substantial consummation of the Plan, the Reorganized Debtor may, with leave of the Bankruptcy Court, and upon notice and opportunity for hearing to the affected Creditor(s) only, remedy any defect or omission, reconcile any inconsistencies in the Plan or in the Confirmation Order or otherwise modify the Plan.

8.2 If the Bankruptcy Court determines that the modification affects all the Creditors, or if the Debtor proposes a material modification affecting all Creditors, then such modification will be governed by § 1127 of the Bankruptcy Code.

## ARTICLE IX
## EFFECT OF CONFIRMATION

9.1 **Discharge of Claims**:

9.1.1 If the Plan is confirmed under § 1191(a), on the Confirmation Date of this Plan, the Reorganized Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code.

9.1.2 If the Plan is confirmed under § 1191(b), as soon as practicable after completion by the Reorganized Debtor of all payments due under the Plan,

unless the court approves a written waiver of discharge executed by the Reorganized Debtor after the order for relief under this chapter, the Court shall grant the Reorganized Debtor a discharge of all debts provided in section 1141(d)(1)(A) of the Code, and all other debts allowed under section 503 of the Code and provided for in this Plan, except any debt— on which the last payment is due under the Plan; or if applicable, of the kind specified in section 523(a) of the Code.

9.2 **Injunction**: Except as otherwise provided in the Plan, from and after the Effective Date, all persons who have held, hold, or may hold Claims against the Debtor and its assets are permanently enjoined from taking any of the following actions against the Debtor and their assets: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein precludes such persons or entities from exercising their rights pursuant to and consistent with the terms of this Plan and the Confirmation Order.

9.3 **Setoffs**: Except as otherwise expressly provided for in the Plan, the Reorganized Debtor pursuant to the Bankruptcy Code (including § 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed by the Holder of a Claim, may setoff against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account such Allowed Claim), any Claims, rights, and Causes of Action of any nature that the Debtor or the Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim (or against the predecessor-in-interest to Holder to the extent that the Holder takes such Allowed Claim subject to setoffs and defenses that may be asserted against the predecessor-in-interest), to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Reorganized Debtor of any Claims, rights, setoff rights and Causes of Action that the Reorganized Debtor may possess against such Holder. The Reorganized Debtor shall not be required to make any distributions to the Holder of any Allowed Claim to the extent that the Reorganized Debtor asserts setoff rights against such Holder until after entry of a Final Order resolving such

setoff rights. In no event shall any Holder of Claims be entitled to setoff any Claim against any Claim, right, or Cause of Action of the Debtor or Reorganized Debtor, unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to § 553 of the Bankruptcy Code or otherwise.

## ARTICLE X
## OBJECTIONS TO CLAIMS AND INTERESTS

10.1 Parties in interest may, within ninety (90) days after the Effective Date, object to the allowance of any Claims, or request the Bankruptcy Court to timely reconsider the allowance of any Claim previously or hereafter filed.

10.2 Parties in interest may object to any Lien as part of the Claims objection process.

## ARTICLE XI
## UNITED STATES TRUSTEE REQUIREMENTS

11.1 The Debtor will continue to remit to the Office of the United States Trustee all appropriate post-confirmation quarterly reports for the relevant time periods.

11.2 After the Case is closed, to the extent any monthly reports have not been timely provided, the Case may be re-opened by the Office of the United States Trustee to file such motions or take such action as appropriate to be provided with such reports.

## ARTICLE XII
## RETENTION OF JURISDICTION

12.1 Notwithstanding confirmation of the Plan, the Bankruptcy Court shall retain jurisdiction for the following purposes until the entry of a final decree closing this case:

     A.    To determine all objections to the allowance of Claims;

     B.    To approve or disapprove any compromise by the Reorganized

Debtor of any Claim;

C. To determine all disputes arising under the Plan, including satisfaction of payments under the Plan or any dispute over any action taken by the Reorganized Debtor, and to enforce, interpret and administer the terms and conditions of the Plan;

D. To determine any applications for allowance of compensation and reimbursement of expenses as may be required for pre- confirmation services;

E. To determine any applications for rejection, assumption, or assignment of executory contracts and the allowance of any claims resulting from the rejection thereof or from the rejection of executory contracts pursuant to the Plan;

F. To determine any applications, adversary proceedings, and contested and litigation matters pending in the case at the Confirmation Date or thereafter filed;

G. To determine any applications on file for approval of settlement agreements and entering and enforcing all appropriate orders in connection therewith;

H. To authorize the Reorganized Debtor to abandon property of the Estate;

I. To modify any provisions of the Plan pursuant to the Rules, the Code and provisions of the Plan;

J. To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

K. To determine such other matters provided for in the Confirmation Order as may, from time to time, be authorized under the provisions of the Code or any applicable law;

L. To enforce all orders, judgments, injunctions, and rulings in connection with this proceeding; and

M. To enter such orders that may be necessary or appropriate to aid

in confirmation and to facilitate implementation of the Plan.

## ARTICLE XIII
## PROVISIONS REGARDING DISTRIBUTIONS

13.1 **Contested Claims**: Notwithstanding anything in this Plan to the contrary, neither the Debtor nor the Reorganized Debtor shall be obligated to make any payments towards any Contested Claim. Further, neither the Debtor nor the Reorganized Debtor shall be required to make any payments for an Allowed Claim to any Creditor if the Debtor or the Reorganized Debtor have filed a motion, objection, adversary proceeding, state court proceeding or other similar notice against such Creditor alleging an objection, claim, cause of action, offset or counter-claim, such that if sustained and not paid by such Creditor would result in a disallowance of such Allowed Claim in accordance with § 502(d) of the Code, provided, however, that the Reorganized Debtor shall escrow a sufficient amount to pay such Consisted Claim in full, in the event that it is allowed.

13.2 **Delivery of Distributions**: Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims and Allowed Interests shall be made by the Reorganized Debtor in order of preference, (a) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtor after the date of any related Proof of Claim or (b) at the addresses set forth on the Proofs of Claim filed by such Holders of Claims if the Reorganized Debtor have not received a written notice of a change of address. Except as set forth herein, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or similar legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Reorganized Debtor shall not incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

13.3 **Allocation of Payments**: All distributions shall be allocated first to principal until the principal amount of the Claim is paid in full, next to interest if interest is allowed in relation to the Claim and finally, to fees, costs, and expenses if such are allowed.

13.4 **Compliance with Tax Requirements and Allocations**: In connection with the Plan, to the extent applicable, the Reorganized Debtor shall be authorized to take all actions necessary or appropriate actions to comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, including

liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtor reserves the right, in its sole discretion, to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, other spousal awards, Liens, and encumbrances.

13.5 **Undeliverable Distributions and Non-Negotiated Checks**: If any distribution to a Holder of a Claim is returned as undeliverable, no further distributions to such Holder of such Claim shall be made unless and until the Reorganized Debtor is notified of the then-current address of such Holder of the Claim, after which time future distributions shall be made to such Holder of the Claim without interest at such address. If checks issued by the Reorganized Debtor on account of Claims are not negotiated within ninety (90) days after the issuance of such check, the check shall be null and void. Amounts in respect to undeliverable distributions and non-negotiated checks shall be held by the Reorganized Debtor until (i) such distributions are claimed or (ii) ninety (90) days after the check is returned or voided due to non-negotiation, after which date all such undistributed and non-negotiated amounts shall revert to the Reorganized Debtor free of any restrictions thereon and the Claim of any Holder or successor to such Holder with respect to such distribution shall be discharged and forever barred, notwithstanding federal or state escheat laws to the contrary. Nothing contained herein shall require the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

13.6 **Fractional Payments**: Notwithstanding any other provision of the Plan to the contrary, payments of fractions of dollars shall not be required. Payment of fractions of dollars that would otherwise be distributed under the Plan shall be rounded to the lower whole number of dollars.

13.7 **Interest and Penalties on Claim**: Unless otherwise specifically provide for in the Plan, the Confirmation Order or required by applicable bankruptcy law, post-petition interest and penalties shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest and penalties accruing on or after the Petition Date through the date that such Claim is satisfied in accordance with the terms of this Plan.

13.8 **Prepayment**: Any distribution required under this Plan may be prepaid, in whole or in part, in the sole and absolute discretion, of the Reorganized Debtor.

# ARTICLE XIV
## MISCELLANEOUS PROVISIONS

14.1 **Authorization**: The Debtor and Reorganized Debtor, and all parties-in- interest, including without limitation any Creditor, shall be required to execute any document reasonably requested by the other to memorialize and effectuate the terms and conditions of this Plan.

14.2 **Notices**: Any notice required or permitted under this Plan shall be made in writing and served either by (i) certified mail, return receipt requested, postage prepaid; or (ii) overnight delivery service, freight prepaid, addressed to the following:

If to Debtor or the Reorganized Debtor:

> Manning Mechanical, PLLC
> Attn: Carlin Manning
> 19165 Robson St.
> Detroit, MI 48235

In all instances, with a copy to counsel:

> Stevenson & Bullock, P.L.C.
> Attn.: Elliot G. Crowder
> 26100 American Drive, Suite 500
> Southfield, MI 48034

14.3 **Change of Address**: In the event the holder of any Claim shall transfer such Claim after the Confirmation Date, it shall immediately advise the Reorganized Debtor in writing of such transfer and the Reorganized Debtor shall be entitled to assume that no transfer of any Claim has been made by any holder unless and until it shall have received written notice of the transfer. Each transferee of any claim shall take such claim subject to the provisions of the Plan and any requests made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in the notice, the Reorganized Debtor shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all right and powers of the transferor under the Plan.

14.4 **Post-Confirmation Professional Fees**: Notwithstanding any provision

of the Bankruptcy Code or the Bankruptcy Rules to the contrary, no professional shall be required to file a 2016(b) statement for any fees or expenses received after the Confirmation Date. Any services performed or expenses incurred by any professional on behalf of the Debtor with respect to these Case after the Confirmation Date shall not be subject to the prior review and approval of the Bankruptcy Court. All Professional Fees and expenses shall be billed directly to the Debtor or Reorganized Debtor as the case may be.

14.5 **Final Decree**: As soon as possible after distributions are complete, the Reorganized Debtor shall file with the Bankruptcy Court final reports and applications for final decree, and the time for filing such report and application shall be extended to such time. However, this case will remain open until after (a) the Subchapter V Trustee files his final report; and (b) the Court enters an order terminating the Subchapter V Trustee's appointment.

14.6 **Transfer Taxes**: The making and delivery of any instruments of transfer to or from the Debtor pursuant to this Plan, including deeds and articles of transfer shall not be taxed under any law imposing a stamp, as provided in § 1146(c) of the Code.

14.7 **Avoidance Actions**: The Reorganized Debtor shall have the sole right to commence, continue, amend or compromise all Avoidance Actions, whether or not those causes of action were the subject of a suit as of the Confirmation Date.

14.8 **Binding Effect**: The Plan and the Confirmation Order will be binding upon, and will inure to the benefit of the Debtor, the Reorganized Debtor, and the holders of all Claims and Interests and their respective successors and assignees.

14.9 **Severability of Plan Provisions**: After the Effective Date, should any term or provision of this Plan be held by the Bankruptcy Court to be invalid, void, or unenforceable, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

14.10 **Notice of Substantial Consummation**: The Reorganized Debtor shall timely file a Notice of Substantial Consummation in accordance with 11 U.S.C. § 1183(c)(2). To confirm the Notice of Substantial Consummation, the Reorganized Debtor shall serve the Subchapter V Trustee with copies of all checks distributed in the initial distribution to Classes requested by the Subchapter V Trustee. The Subchapter V Trustee will not file the final report until after receipt and confirmation

of the initial distribution checks for any Classes she requests, to her satisfaction.

*[SIGNATURES ON FOLLOWING PAGE]*

Respectfully submitted,
**STEVENSON & BULLOCK, P.L.C.**

By: /s/ Elliot G. Crowder
Elliot G. Crowder (P76137)
Ernest M. Hassan, III (P67815)
Tayler J. Leamon (P83385)
Counsel for Debtor
26100 American Drive, Suite 500
Southfield, MI 48034
Phone: (248) 354-7906
Facsimile: (248) 354-7907
Email: ecrowder@sbplclaw.com
Email: ehassan@sbplclaw.com
Email: tleamon@sbplclaw.com

Dated: May 5, 2026

**MANNING MECHANICAL, PLLC**

By: /s/ Carlin Manning
Carlin Manning
Its: Responsible Person

Dated: May 5, 2026

# **EXHIBIT A**

## Assets

| Description of Asset | Scheduled Value | Liquidation Value | Total Value |
|---|---|---|---|
| Cash on Hand | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 |
| 8800 and 8806 W. McNichols | $ 250,000.00 | $ 237,500.00 | $ 237,500.00 |
| 8744 W. McNichols | $ 160,000.00 | $ 152,000.00 | $ 152,000.00 |
| 8822 W. McNichols | $ 10,000.00 | $ 9,500.00 | $ 9,500.00 |
| 8826 W. McNichols | $ 10,000.00 | $ 9,500.00 | $ 9,500.00 |
| Bank Accounts | $ 500.00 | $ 500.00 | $ 500.00 |
| Accounts Receivable | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 |
| Miscellaneous Office Furniture and Equipment | $ 2,000.00 | $ 600.00 | $ 600.00 |
| Miscellaneous Tools and Equipment | $ 10,000.00 | $ 3,000.00 | $ 3,000.00 |
| Miscellaneous Parts | $ 5,000.00 | $ 1,500.00 | $ 1,500.00 |
| Office computers and phones | $ 500.00 | $ 166.67 | $ 166.67 |
| 2021 Ram Promaster City, VIN 5268 | $ 18,000.00 | $ 5,400.00 | $ 5,400.00 |
| 2019 Ram 1500 Promaster, VIN 7706 | $ 13,000.00 | $ 3,900.00 | $ 3,900.00 |
| 2017 Ram 1500 Promaster, VIN 2001 | $ 10,000.00 | $ 3,000.00 | $ 3,000.00 |
| 2022 Ram Promaster City, VIN 49666 | $ 20,000.00 | $ 6,000.00 | $ 6,000.00 |
| 2015 Nissan Altima | $ 2,000.00 | $ 600.00 | $ 600.00 |
| **Total** | | $ | 455,166.67 |

## Liabilities

| Name of Claimant | Amount of Claim | Comments |
|---|---|---|
| **Secured** | | |
| Wayne County Treasurer | $ 34,803.90 | |
| Detroit Water and Sewage | $ 2,261.27 | |
| Newtek Bank | $ 433,318.39 | |
| Thoro Corp | $ 9,625.00 | |
| SBA | $ 828,200.00 | |
| Ally Bank | $ 44,433.08 | |
| Fugi Funding | $ 153,324.38 | |
| **Priority** | | |
| Michigan Department of Treasury | $ 123,497.02 | |
| **Administrative** | | |
| Stevenson & Bullock, P.L.C. (est.) | $ (78,000.00) | |
| Subchapter V Trustee (est.) | $ (7,500.00) | |
| Ch. 7 Trustee fees (est.) | $ (26,008.33) | |
| Ch. 7 Trustee professional fees (est.) | $ (25,000.00) | |

| Distribution of Proceeds of Assets in Event of Liquidation | |
|---|---|
| Gross proceeds available | $455,166.67 |
| Less Allowed Secured Claims | $ (1,505,966.02) |
| Less Allowed Priority Tax Claims | $ (123,497.02) |
| Less Administrative Expenses (total) | $ (136,508.33) |
| **Total** | $ (1,310,804.70) |

## Net Proceeds

| | |
|---|---|
| Proceeds available to prepetition unsecured creditors in Ch. 7 | $0 |
| Proceeds available to prepetition unsecured creditors under the Plan | $25,000 |

# EXHIBIT B

Manning Mechanical, PLLC Plan Projections

| Income | 2026 (July-Dec) | 2027 | 2028 | 2029 | 2030 | 2031 (Jan-June) |
|---|---|---|---|---|---|---|
| Total Sales (Projected) | $ 469,599.00 | $ 922,999.00 | $ 924,999.00 | $ 926,599.00 | $ 928,999.00 | $ 471,999.00 |
| Materials Costs | $ 140,000.00 | $ 281,000.00 | $ 282,000.00 | $ 283,000.00 | $ 284,000.00 | $ 141,000.00 |
| Property Taxes (all properties) | $ 6,360.00 | $ 12,720.00 | $ 12,720.00 | $ 12,720.00 | $ 12,720.00 | $ 6,360.00 |
| Priority Tax Claim Payment | $ 13,646.34 | $ 27,292.68 | $ 27,292.68 | $ 27,292.68 | $ 27,292.68 | $ 13,646.34 |
| Payroll | $ 143,520.00 | $ 287,040.00 | $ 287,040.00 | $ 287,040.00 | $ 287,040.00 | $ 143,520.00 |
| Payroll Taxes | $ 19,924.80 | $ 39,849.60 | $ 39,849.60 | $ 39,849.60 | $ 39,849.60 | $ 19,924.80 |
| Payroll Processing | $ 1,800.00 | $ 3,600.00 | $ 3,600.00 | $ 3,600.00 | $ 3,600.00 | $ 1,800.00 |
| DTE Energy (all properties) | $ 3,600.00 | $ 7,200.00 | $ 7,200.00 | $ 7,200.00 | $ 7,200.00 | $ 3,600.00 |
| Comcast Internet | $ 1,750.02 | $ 3,500.04 | $ 3,500.04 | $ 3,500.04 | $ 3,500.04 | $ 1,750.02 |
| ATT Cellular | $ 2,526.00 | $ 5,052.00 | $ 5,052.00 | $ 5,052.00 | $ 5,052.00 | $ 2,526.00 |
| Ring Central | $ 1,463.28 | $ 2,926.56 | $ 2,926.56 | $ 2,926.56 | $ 2,926.56 | $ 1,463.28 |
| Insurance | $ 24,000.00 | $ 48,000.00 | $ 48,000.00 | $ 48,000.00 | $ 48,000.00 | $ 24,000.00 |
| Professional Fees | $ 15,000.00 | $ 15,000.00 | $ 12,000.00 | $ 12,000.00 | $ 12,000.00 | $ 12,000.00 |
| Miscellaneous | $ 3,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 3,000.00 |
| Advertising | $ 1,500.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 1,500.00 |
| Vehicle Payments | $ 9,350.50 | $ 13,159.92 | $ 13,159.92 | $ 13,159.92 | $ - | $ - |
| Truck Fuel | $ 8,000.00 | $ 17,000.00 | $ 17,000.00 | $ 17,000.00 | $ 17,000.00 | $ 8,500.00 |
| Truck Repairs & Normal Maintenance | $ 3,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 10,000.00 | $ 10,000.00 |
| Intuit Quickbooks | $ 948.00 | $ 1,896.00 | $ 1,896.00 | $ 1,896.00 | $ 1,896.00 | $ 948.00 |
| Credit Card Processing Fees | $ 4,200.00 | $ 8,400.00 | $ 8,400.00 | $ 8,400.00 | $ 8,400.00 | $ 4,200.00 |
| Customer Management (CRM) software | $ 6,231.00 | $ 12,462.00 | $ 12,462.00 | $ 12,462.00 | $ 12,462.00 | $ 6,231.00 |
| Wix Email Accounts | $ 184.44 | $ 368.88 | $ 368.88 | $ 368.88 | $ 368.88 | $ 184.44 |
| Better Business Bureau | $ 324.00 | $ 648.00 | $ 648.00 | $ 648.00 | $ 648.00 | $ 324.00 |
| Waste Management | $ 1,980.00 | $ 3,960.00 | $ 3,960.00 | $ 3,960.00 | $ 3,960.00 | $ 1,980.00 |
| Office Supplies | $ 300.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 300.00 |
| Guardian Alarm/Security | $ 600.00 | $ 1,200.00 | $ 1,200.00 | $ 1,200.00 | $ 1,200.00 | $ 600.00 |
| Class I Plan Payment (Wayne County) | $ 3,845.82 | $ 7,691.64 | $ 7,691.64 | $ 7,691.64 | $ 7,691.64 | $ 3,845.82 |
| Class II Plan Payment (Detroit) | $ 249.84 | $ 499.68 | $ 499.68 | $ 499.68 | $ 499.68 | $ 249.84 |
| Class III Plan Payment (Newtek) | $ 46,199.88 | $ 92,399.76 | $ 92,399.76 | $ 92,399.76 | $ 92,399.76 | $ 46,199.88 |
| Class VIII Plan Payment (unsecured) | $ 2,500.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 2,500.00 |
| Total Expenses | $ 466,003.92 | $ 913,466.76 | $ 911,466.76 | $ 912,466.76 | $ 904,306.84 | $ 462,153.42 |
| Net Operating Income | $ 3,595.08 | $ 9,532.24 | $ 13,532.24 | $ 14,132.24 | $ 24,692.16 | $ 9,845.58 |

## EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION - DETROIT**

**IN THE MATTER OF:**

| | |
|---|---|
| Manning Mechanical, PLLC | Bankruptcy Case No. 26-41173 |
| | Judge Thomas J. Tucker |
| Debtor | Chapter 11 |
| | *Subchapter V* |

**BALLOT FOR ACCEPTANCE OR REJECTION OF THE PLAN OF**
**REORGANIZATION FOR MANNING MECHANICAL, PLLC**

The Debtor has filed the Plan of Reorganization of Manning Mechanical, PLLC (the "Plan") referred to in this Ballot. The Plan provides information to assist you in deciding how to vote your ballot. If you do not have a copy of the Plan, you may obtain a copy from Debtor's counsel Elliot G. Crowder, Stevenson & Bullock, P.L.C., 26100 American Drive, Suite 500, Southfield, MI 48034 and ecrowder@sbplclaw.com.

You should review the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. If you hold claims or equity interest in more than one class, identify each class, amount of claim and acceptance or rejection separately. If you require additional ballots, you may obtain them from Debtor's counsel.

If your ballot is not received by Elliot Crowder, Stevenson & Bullock, P.L.C., 26100 American Drive, Suite 500, Southfield, MI 48034 on or before **June 8, 2026,** and unless such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.

If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.

To have your vote count, you must complete and return this ballot to:

Elliot G. Crowder
Stevenson & Bullock P.L.C.
26100 American Drive, Suite 500
Southfield, Michigan 48034

NAME OF CREDITOR     _____

TYPE OF CLAIM (Check one)

| | |
|---|---|
| CLASS I | |
| CLASS II | |
| CLASS III | |
| CLASS IV | |
| CLASS V | |
| CLASS VI | |
| CLASS VII | |
| CLASS VIII | |

AMOUNT OF CLAIM     $_____

MARK ONE ONLY:     Accepts Plan     _____

    Rejects Plan     _____

SIGNATURE:     _____

NAME:     _____

TITLE:     _____

ADDRESS:     _____
    _____
    _____

DATE:     _____